**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **FIDELITY NATIONAL TITLE**<br>  **INSURANCE COMPANY, INC.,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-12-148 |
| **M & R TITLE, INC.,** *et al.,* | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff, a title insurance company, has brought this action against fifty named defendants over a series of alleged fraudulent real estate transactions. Two of the defendants move for summary judgment on personal jurisdiction grounds, asserting that they are domiciliaries of the Commonwealth of Virginia and that the basis for the suit is a Virginia-based transaction in Virginia real property. Plaintiff responds by arguing that the defendants are subject to jurisdiction under Maryland's long-arm statute and that they have maintained continuous and systematic ties with Maryland. Because I find that the Maryland long-arm statute does not reach these Defendants, I grant summary judgment in their favor.

**I.   BACKGROUND**

Plaintiff Fidelity National Title Insurance Co., Inc. ("Fidelity") filed this action in January 2012 against fifty named defendants, seeking to recover damages arising out of a series of allegedly fraudulent real estate transactions. *See* Compl. 1–10, ECF No. 1. According to Plaintiff, between 2008 and 2010, Defendants M & R Title, Inc. ("M&R") and its principal,

Marla Messenger, orchestrated a series of real estate transactions "in which they purchased, in the names of fraudulent borrowers and fictitious lenders, properties at below market value and re-sold them at grossly inflated prices to third parties who gave new mortgages to finance the purchase." *Id.* at 10. As part of these transactions, M&R and Messenger, along with "various straw buyers and straw lenders," are alleged to have taken the escrow funds from these transactions and appropriated them for personal use. *Id.* Because Fidelity is the successor to the issuer of title insurance commitments and policies in connection with those transactions, it has brought this suit alleging that Defendants' misconduct has exposed it to substantial liability. *Id.*

The Complaint's allegations include a transaction (the "Danton Lane Transaction") involving a property located at 909 Danton Lane, Alexandria, Virginia (the "Danton Lane Property"), in which Defendants Jeffrey D'Antonio and Anita D'Antonio (collectively, the "D'Antonios") were involved. Compl. 125. According to the Complaint, on or about February 12, 2008, M&R and Messenger conducted a sale of the Danton Lane Property to Jeffrey D'Antonio for a purchase price of $676,000. Compl. ¶ 864. At that time, the D'Antonios obtained a loan in the amount of $617,000, secured by a deed of trust dated February 12, 2008. *Id.* ¶¶ 867–68. The trustee on the Deed of Trust was Messenger's husband, and both the lender and trustee's addresses were listed as 5802 Broadmoor Street, Alexandria, Virginia— Messenger's former home address. *Id.* ¶¶ 869–70. Neither the deed nor the deed of trust was recorded until May 21, 2008. *Id.* ¶ 865. On May 23, 2008, M&R conducted a closing on two refinance loans to the D'Antonios. *Id.* ¶ 871. Subsequently, Anita D'Antonio, in connection with the issuance of a title insurance policy by Plaintiff's predecessor, executed a false affidavit stating that she had owned the Danton Lane Property for at least 123 days prior to May 23, 2008.

*Id.* ¶¶ 872–73.  Fidelity later learned that M&R and Messenger did not disburse the escrow funds held in connection with the Danton Lane Property transaction.  *Id.* ¶ 875.

On January 17, 2013, the D'Antonios moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, as well as pursuant to Fed. R. Civ. P. 12(b)(6).  D'Antonio Mot. to Dismiss, ECF No. 58.  With respect to the claimed lack of personal jurisdiction, the D'Antonios asserted that they are residents of the Commonwealth of Virginia and that this suit arises out of a transaction in Virginia real property that took place entirely in Virginia.  Mem. of Law in Supp. of the D'Antonios' Mot. to Dismiss ("D'Antonio Dismiss Mem.") 6, ECF No. 58-1.  In response, Fidelity argued that additional discovery was necessary before the Court could rule on whether it can exercise personal jurisdiction over the D'Antonios.  Pl.'s Opp'n to the D'Antonios' Mot. to Dismiss and Mem. in Supp. Thereof ("Pl.'s Dismiss Opp'n") 1, ECF No. 63.  On April 26, 2013, I issued a letter order denying the motion to dismiss without prejudice to refiling after discovery on the issue of personal jurisdiction.  Letter Order, ECF No. 94.

Fidelity and the D'Antonios have conducted discovery on the issue of personal jurisdiction, Status Report and Consent Mot. to Modify Scheduling Order ¶ 2, ECF No. 148, and the D'Antonios filed a Motion for Summary Judgment for Lack of Personal Jurisdiction on December 2, 2013 (the "D'Antonio Summ. J. Mot."), ECF No. 150, accompanied by a supporting Memorandum ("D'Antonio Summ. J. Mem."), ECF No. 150-1.  Fidelity has filed its Opposition ("Pl.'s Summ. J. Opp'n"), ECF No. 151, and the D'Antonios have filed a Reply ("D'Antonio Summ. J. Reply"), ECF No. 152.  The motion now is before me and, having reviewed the filings, I find a hearing is not necessary.  Loc. R. 105.6.

## II.   LEGAL STANDARD

When a defendant challenges this Court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the jurisdictional question "'is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" *Fyfe Co., LLC v. Structural Grp., LLC*, No. CCB-13-176, 2013 WL 2370497, at *2 (D. Md. May 30, 2012) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).

> Where the jurisdictional issue is in dispute, the plaintiff's averment of jurisdictional facts will normally be met in one of three ways: (1) by a Rule 12(b)(2) motion, which assumes the truth of plaintiff's factual allegations for purposes of the motion and challenges their sufficiency, (2) by a Rule 56 motion, which asserts that there are undisputed facts demonstrating the absence of jurisdiction, or (3) by a request for an adjudication of disputed jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the merits. . . . If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought.

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

Personal jurisdiction may be either general or specific. *Tawney v. AC & R Insulation Co., Inc.*, No. WDQ-13-1194, 2013 WL 5887625, at *2 (D. Md. Oct. 30, 2013); *see Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012).

> To exercise general jurisdiction over a defendant, the defendant's activities in the state must be "continuous and systematic." *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). If the cause of action arises out of the defendant's minimum contacts with the forum, the court may exercise specific jurisdiction. . . . In determining whether the exercise of specific jurisdiction comports with due process, a court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst of Md., Inc.*, 334 F.3d at 397.

*Tawney*, 2013 WL 5887625, at *2 (footnotes omitted).

Although less contact is required with the forum state for specific jurisdiction than for general jurisdiction, *see ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (4th Cir. 1997), both forms of jurisdiction "require[] that the defendant purposefully avail itself of the privilege of conducting activities within the forum state," *Tawney*, 2013 WL 5887625, at *2 (footnote omitted). Thus, whether a federal court may exercise personal jurisdiction is a two-part analysis: "[A] district court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Id*. (citing *Carefirst of Md., Inc.*, 334 F.3d at 396). The Maryland long-arm statue is "coextensive with the scope of jurisdiction allowable by due process." *Id.* (citing *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 486 (Md. 2006)). Nonetheless, "'the Court must address both elements in the personal jurisdiction analysis.'" *Id.* (quoting *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698.

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317, 325 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts

from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* "[U]nder Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 546 (D. Md. Aug. 28, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)).

## III. DISCUSSION

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003).

To fall under Maryland's long-arm statute, Fidelity's claim against the D'Antonios must "aris[e] from an[] act enumerated in" the statute. Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). The long-arm statute provides:

> A court may exercise personal jurisdiction over a person, who directly or by an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Cts. & Jud. Proc. § 6-103(b). "A plaintiff must identify a Maryland statutory provision authorizing jurisdiction." *Tawney*, 2013 WL 5887625, at *2 (citing *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698).

The crux of the D'Antonios' argument is that they "do not currently reside in Maryland," that they have not done so "for well over a decade (over two decades for Jeffrey D'Antonio)," and that "it is undisputed that the D'Antonios are residents of the Commonwealth of Virginia." D'Antonio Summ. J. Mem. 10. Further, the D'Antonios argue that "[w]ith respect to the [Danton Lane] Property, the D'Antonios, Virginia residents, purchased and then refinanced a Virginia property, with financing arranged by a Virginia mortgage broker," and that the "settlements were performed by Virginia companies and the closings occurred in Virginia." *Id.* at 13.

In response, Fidelity argues that this Court has personal jurisdiction over the D'Antonios pursuant to Maryland's long-arm statute "as the D'Antonios have transacted business in Maryland." Pl.'s Summ. J. Opp'n 2. According to Fidelity, jurisdiction would be proper under Cts. & Jud. Proc. § 6-103(b)(1) because the D'Antonios lived in Maryland in the past and regularly travel to Maryland, *id.* at 3–5, and because they engage in some business transactions in Maryland, *id.* at 3–6.

"The Maryland long-arm statute, however, limits specific jurisdiction to cases where the *cause of action* 'aris[es] from any act enumerated' in the statute itself." *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 870 F. Supp. 2d 415, 421 (D. Md. 2012) (quoting Cts. & Jud. Proc. § 6-103(b)(1) (alteration in original)) (emphasis added). It is apparent that the Danton Lane transaction, which is the basis for this suit, was conducted in its entirety in Virginia. *See* D'Antonio Summ. J. Mem. 6–8. In trying to show the D'Antonios' ties to Maryland, Fidelity

has failed to contradict this key fact as it is required to do by Fed. R. Civ. P. 56(c). *See* Pl.'s Summ. J. Opp'n. Accordingly, this case does not "aris[e] from any act" that is covered by the long-arm statute, and Maryland's statute cannot give rise to specific personal jurisdiction over the D'Antonios.

Though Fidelity is imprecise in its use of terminology, it also appears to argue that "general personal jurisdiction [in Maryland] attaches to the D'Antonios," Pl.'s Summ. J. Opp'n 6, based on the notion that "the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst*, 334 F.3d at 396. But "[a]lthough Maryland's long-arm statute authorizes the exercise of personal jurisdiction to the limits allowed by the Constitution, it also limits the exercise of specific jurisdiction to causes of action that fall within one of its enumerated provisions." *Murray v. Bierman, Geesing, Ward & Wood, LLC*, No. RWT-11-1623, 2012 WL 4480679, at *2 (D. Md. Sept. 27, 2012); *cf. Cappel v. Riaso, LLC*, 13 A.3d 823, 828–29 (Md. Ct. Spec. App. 2011) (finding that § 6-103(b)(5), providing for jurisdiction based on the defendant's relationship with Maryland real property, does not create jurisdiction unless the claim at issue arises from that real property). "The view that § 6-103(b)(1) could be employed to support jurisdiction on a general jurisdiction theory is a novel one, entirely inconsistent with the requirement set forth in § 6-103(a) that jurisdiction could be sustained under the section only if the cause of action arose out of the specific contacts enumerated in § 6-103(b)." 1-3 Modern Maryland Civil Procedure § 3.3(c)(3)(b) n.266.

In any event, it also does not appear that general jurisdiction exists here.

> Maryland law provides for general personal jurisdiction under . . . Cts. & Jud. Proc., § 6-102(a), which states in relevant part: "(a) A court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his princip[al] place of business in the State."

8

*Provident Bank v. May*, No. GLR-11-2458, 2012 WL 3595140, at *1 (D. Md. Aug. 17, 2012). There is no dispute that the D'Antonios are not domiciled in Maryland, and Plaintiff has not alleged that they were served here.

Further, even assuming that "continuous and systematic" contacts can render a nonresident natural person subject to general jurisdiction in Maryland under Maryland law,[1] such jurisdiction requires Fidelity to satisfy "a more demanding standard than is necessary for establishing specific jurisdiction," *ALS Scan Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). The ties must be "so 'continuous and systematic' as to render [the defendants] essentially at home in the forum State," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), and Fidelity has made no such showing with respect to either of the D'Antonios.

---

[1] This proposition is far from clear. First, it strains logic to imagine that a defendant over whom the State cannot exercise special personal jurisdiction nevertheless would satisfy the more stringent requirements for the exercise of general personal jurisdiction. But moreover, the Supreme Court has said only that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) *corporations* to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *Helicopteros Nacionalies de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). This test originally derived from the need to create a workable fiction in order to determine the physical presence of corporate entities for jurisdictional purposes, in light of the reality that those entities cannot be physically "present" anywhere in the traditional sense. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945). This logic does not seem to apply to natural persons, who physically are present only in one place at a time; I have not found any case in this Circuit or in Maryland in which a natural person has been *subjected* to general personal jurisdiction on the basis of continuous and systematic contacts alone (rather than shielded from jurisdiction based on a lack of such contacts), and counsel have pointed to none. *But cf., e.g.*, *Glynn v. EDO Corp.*, 641 F, Supp. 2d 476, 488 (D. Md. 2009) (analyzing whether natural person had "continuous and systematic" contacts sufficient to give rise to general personal jurisdiction and finding that he did not); *McGann v. Wilson*, 701 A.2d 873, 877 (Md. Ct. Spec. App. 1997) (considering whether general jurisdiction over a natural person existed under Cts. & Jud. Proc. § 6-103 and finding that it did not).

With respect to Jeffrey D'Antonio, Fidelity relies on the fact that he lived in Maryland over thirty years ago and, over twenty years ago, attended the University of Maryland while living in Hyattsville, during which time he "performed various odd jobs in Maryland." Pl.'s Summ. J. Opp'n 3. Fidelity also claims that he "has regularly travelled to Maryland . . . once or twice a year," that since 2002, Jeffrey's home improvement business has performed work in Maryland for approximately twenty-one total weeks, and that he has traveled to Maryland for vacations and has, at various times, purchased products and services here. *Id.* at 3–4.

With respect to Anita D'Antonio, Fidelity relies on the fact that she lived and worked in Maryland in the late 1990s and "comes to Maryland to see Jeffrey's family at least once or twice a year," and has taken "approximately 4 vacations in Ocean City" since 2005. *Id.* at 4–5. Fidelity also argues that Anita markets herself as "'a realtor in the Washington DC metropolitan area,' which includes Maryland," *id.* at 5, although Fidelity does not allege that she engages in any business in Maryland and her website states that she is licensed only in Virginia and the District of Columbia, Anita D'Antoni Website 1, Pl.'s Summ. J. Opp'n Ex. E, ECF No. 151-4; *see also* D'Antonio Summ. J. Reply 5 ("Anita D'Antonio has never held a Maryland-issued real estate salesperson license").

Far from "continuous and systematic," it appears that the links between the D'Antonios and Maryland are better viewed as occasional and sporadic—perhaps even unusually so in light of their proximity to Maryland. Viewed most charitably to Fidelity, even regular vacations and travel and occasional work in Maryland do not suffice to "render [the D'Antonios] essentially at home" here. *Goodyear Dunlop Tires*, 131 S. Ct. at 2851. Further, courts in Maryland have rejected the proposition that general jurisdiction can be based upon occasional travel to Maryland, *see Glynn v. EDO Corp.*, 641 F, Supp. 2d 476, 488 (D. Md. 2009), conducting a small

portion of a defendant's business in the State, *Robbins v. Yutopian Enters., Inc.*, 202 F. Supp. 2d 426, 429 (D. Md. 2002) (finding that forty-six business transactions in Maryland in less than one year was insufficient to give rise to general personal jurisdiction); *Rossetti v. Esselte-Pendeflex Corp.*, 683 F. Supp. 532, 535 (D. Md. 1998) (finding several million dollars' worth of business insufficient where it was only a small minority of the defendant's total business), or even possession of a license to do business in the State, *Congressional Bank v. Potomac Educ. Found., Inc.*, No. PWG-13-889, 2014 WL 347632 (D. Md. Jan. 30, 2014) (finding that a Maryland CPA license was not sufficient to give rise to general personal jurisdiction in Maryland). Thus it is apparent that the D'Antonios' "contacts with Maryland are not so continuous and systematic that [they] 'should reasonably anticipate being haled into court there.'" *CapitalSource v. B & B Contractors, Inc.*, No. DKC-04-3739, 2005 WL 1025953, at *4 (D. Md. Apr. 28, 2005) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

**IV.    CONCLUSION**

For the aforementioned reasons, Defendants Anita and Jeffrey D'Antonio's Motion for Summary Judgment will be GRANTED. A separate order shall issue.


Dated: May 12, 2014                                    /S/
                                                                    Paul W. Grimm
                                                                    United States District Judge
dsy